UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE C., | ) |
| Plaintiff, | ) No. 19-cv-1981 |
| v. | ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christine C.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [dkt. 17] is GRANTED; Defendant's motion for summary judgment [dkt. 27] is DENIED. The ALJ's decision is reversed and remanded for proceedings consistent with this Memorandum Opinion and Order.

**I. Background**

   **a. Procedural History**

Plaintiff was born in 1963. [Administrative Record ("R.") 90.] In early September 2015, Plaintiff filed for both Disability Insurance Benefits and Supplemental Security Benefits, alleging a disability onset date of January 5, 2015. [R. 13.] Her application was denied initially and again upon reconsideration. *Id.*

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] Plaintiff has filed a Brief in Support of Reversing the Decision of the Commissioner of Social Security [dkt. 17], which the Court construes as a motion for summary judgment.

Plaintiff, represented by counsel, then appeared at an administrative hearing before Administrative Law Judge ("ALJ") Nathan Mellman on October 17, 2017. [R. 45-75.] A vocational expert ("VE") was present and offered testimony. *Id*. On March 12, 2018, ALJ Mellman issued an unfavorable decision. [R 13-36.] Plaintiff requested Appeals Council review, which was denied on February 5, 2019. [R. 1-6.] Thus, the Decision of the Appeals Council is the final decision of the Commissioner. Plaintiff, through counsel, filed the instant action on March 22, 2019, seeking review of the Commissioner's most recent decision. [Dkt. 1.]

    b.   **The ALJ's Decision**

On March 12, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 13-36.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 5, 2015. [R. 15.] At Step Two, the ALJ found that Plaintiff had the severe impairments of: morbid obesity, degenerative disc disease of the lumbar spine; degenerative joint disease of the knees; venous insufficiencies with episodes of venous stasis ulcers and cellulitis; and bipolar disorder. *Id*. At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 16-17.] Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; she can sit for seven hours, and stand and walk for one hour in a typical eight hour workday; she can occasionally operate foot controls bilaterally, climb ramps and

stairs, stoop, kneel, crouch, and crawl; she should never climb ladders, ropes, or scaffolds, or work at unprotected heights; she can occasionally work in environments with dust, odors, fumes, and pulmonary irritants; she can perform simple and routine tasks; and she would need a cane to ambulate. [R. 17-34.] At Step Four, the ALJ found Plaintiff incapable of performing any of her past relevant work, but that other jobs existed in significant numbers in the national economy that Plaintiff would be able to perform. [R. 35-36.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 36.]

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. A court's scope of review in these cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the

Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

Plaintiff asserts the ALJ assessed her subjective symptoms incorrectly, and that this is grounds for remand.[3] The Court agrees.

In his analysis of Plaintiff's subjective symptoms, the ALJ used the phrase "not entirely consistent" to describe the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms vis-à-vis the medical evidence of record. [R. 20.] Specifically, the ALJ noted,

> [a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id*.

When weighing a claimant's statements about their ailments, an ALJ must apply a preponderance standard, not clear and convincing, or beyond a reasonable doubt, standard of review. *See* HALLEX I-3-3-4. Preponderance means the fact to be proven is more likely than not. *Id.*; 20 C.F.R. § 404.901; 20 C.F.R. § 404.953(a). Therefore, Plaintiff argues that the phrase "not entirely consistent" represents an incorrect legal standard applied by the ALJ to her case, as it implies the ALJ believed

---

[3] Because the Court remands on those issued discussed in the instant Memorandum Opinion and Order, the Court offers no opinion at this time as to the other alleged bases of error in the ALJ's decision raised by Plaintiff.

4

Plaintiff's statements could only be accepted if "entirely consistent" with the evidence. [Dkt. 28, p. 19.]

A recent Northern District of Illinois case, *Minger v. Berryhill*, 307 F. Supp. 3d 865 (N.D. Ill. 2018), is instructive. *Minger* contained the same boilerplate language as is present here regarding consistency of a claimant's subjective statements. The *Minger* court identified this language as "yet another example of the continuous, confusing and meaningless boilerplate that is all too common in these decisions and that stubbornly persists in spite of the efforts of the Court of Appeals." *Minger*, 307 F. Supp. 3d at 871 (citing, *inter alia*, *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (deriding "ALJ's use of language that this court routinely has condemned as 'meaningless boilerplate' and 'backwards' analysis.")). *Minger* goes on to note that the questioned language "doesn't even match what the Commissioner's own regulations say the standard for evaluating allegations about symptoms is: that the ALJ must determine whether those allegations 'can reasonably be accepted as consistent with the objective medical evidence and other evidence.'" *Minger*, 307 F. Supp. 3d at 871 (citing 20 C.F.R. § 416.929(a)). The Court adopts the language (and incredulity) of *Minger* in querying, "[i]f ALJs really want boilerplate paragraphs in their opinions so badly, why not simply echo the regulatory language?" *Minger*, 307 F. Supp. 3d at 871.

The Commissioner argues that other Northern District cases have dismissed arguments where the claimant has argued the ALJ used the incorrect standard. [Dkt. 28 pp. 19-20 (citing *Clemente A. v. Saul*, 2019 WL 3973117, *3 (N.D. Ill., 2019); *Kuhn v. Berryhill*, 2019 WL 1172988, *7 (N.D. Ill., 2019); *Joe R. v. Berryhill*, 363 F.Supp.3d 876, 884 (N.D. Ill., 2019); and *Robert D. v. Berryhill*, 2018 WL 4565385, *6 (C.D. Ill.,

2018))).] On the other hand, however, Plaintiff points out that while there are some cases indicating the "not entirely consistent" language is not fatal if adequate further analysis is provided, there are also numerous cases finding that further analysis does not remedy the ALJ's application of the wrong standard by finding statements "not entirely consistent." [Dkt. 17, pp. 19-20 (citing *Minger*, 307 F.Supp.3d at 865; *Farley v. Berryhill*, 314 F.Supp.3d 941, 946 (N.D. Ill., 2018); *Dunbar v. Berryhill*, 2018 WL 4095094, *3, FN 1 (N.D. Ill., 2018))]; [Dkt. 29, pp. 10-11 (citing *Bancolita v. Berryhill*, 2018 WL 2731227, *4 (N.D. Ill., 2018); *Justin H. v. Berryhill*, 2019 WL 2417423, *12-13 (N.D. Ind., 2019); *John P. v. Saul*, 2019 WL 4072118, *11 (N.D. Ind., 2019); and *Murphy v. Berryhill*, 2019 WL 1123511, *15 (N.D. Ind., 2019)).] Plaintiff contends the later cited cases adopted the correct standard because analysis under too strict a standard could lead the ALJ to discount statements which, under the correct standard, would not be discounted or rejected. [Dkt. 29, pp. 10-11.] The Court agrees.

However, there are cases suggesting the boilerplate "not entirely consistent" language could be rendered benign as long as the ALJ provides a sufficient explanation for how the claimant's statements were weighed. *See Clemente A.*, 2019 WL 3973117, at *4 (collecting cases; noting that the Seventh Circuit has upheld similar boilerplate language so long as ALJ's decision is fully explained). Specifically, "When an individual's symptoms and related limitations are found to be inconsistent with the evidence in the record, the ALJ must explain which of an individual's symptoms she found consistent or inconsistent with the evidence and how her evaluation of the individual's symptoms led to her conclusions." *Dejohnette v. Berryhill*, 2018 WL 521589, at *5 (N.D. Ill. Jan. 22, 2018) (citing SSR 16-3p). Here,

6

unfortunately, the ALJ's language implied some of Plaintiff's statements were credited and some were not, without indicating which statements were which, thus frustrating judicial review of the RFC assessment. This failure renders meaningful judicial review impossible. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (without a logical bridge, the reviewing court is unable to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("'not entirely credible' boilerplate yields no clue to what weight the trier of fact gave the testimony").

For example, it is nearly impossible to determine whether the ALJ may have discounted the statements about leg elevation from Plaintiff's long-time treating physician, Dr. Jessica McIntyre, MD, because he found Plaintiff's claims on this point "not entirely consistent" with the medical record. The Commissioner argues the ALJ held the "view that Plaintiff appeared to be overstating her limitations" because he doubted the veracity of Plaintiff's statements that she was told, on multiple occasions, to elevate her legs. [Dkt. 28, p. 18-19.] This *post hoc* analysis doesn't appear anywhere in the ALJ's opinion, and the Court is left to guess how or why the ALJ discounted the need for leg elevation (*e.g.*, Did the ALJ's potentially incorrect analysis of Plaintiff's leg-elevation statements factor into the ALJ's analysis in giving little weight to Dr. McIntyre's statements? Did the ALJ analysis of Dr. McIntyre's opinions and their "little weight" designation lead to the ALJ's "view" that Plaintiff had "overstat[ed] her limitations," including those about leg elevation?) This illustrates merely *one* aspect of frustrated judicial review in the instant matter.

This brings the Court, briefly, to its next point about leg elevation. Had the

7

ALJ credited Plaintiff's need to elevate her legs every hour for 20 minutes, he would have had to find Plaintiff disabled, as the VE in this case testified there would be no jobs available for someone who needed this accommodation. [R. 72-73.] This illustrates how significant the leg-illustration issue is to the instant matter. Thus, resolving the conflicts/ambiguities concerning Plaintiff's need to elevate her legs should be paramount on remand, even if it entails seeking clarifying testimony from Dr. McIntyre on this point. Additional evidence or clarification from a medical source must be sought when there is a conflict or an ambiguity that must be resolved, necessary information is missing, or a report does not appear to be based upon objective evidence. 20 C.F.R. § 404.1512(e)(1). Further, it is the duty of the ALJ to develop a full and fair record, which is lacking here without resolution of this conflict. *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir.1999). Failure to fulfill this obligation is "good cause" to remand for the gathering of additional evidence. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).

While the Commissioner is correct that an ALJ is not required to address all of a claimant's individual statements, none of the cases the Commissioner cites include the same finding as the ALJ here. [Dkt. 28, p. 16 (citing *Pepper v. Colvin*, 712 F.3d 351, 368-69 (7th Cir. 2013); *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007); and *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005)).] Specifically, the ALJs in both *Pepper* and *Jones* found the claimants' statements not credible. *Pepper*, 712 F.3d at 368-89; *Jones*, 623 F.3d at 1160. In *Schmidt*, the ALJ found the evidence did not support the claimant's allegations (*i.e.*, essentially finding the claimant not credible). *Schmidt*, 496 F.3d at

8

841. Likewise, in *Sienkiewicz*, the ALJ found the claimant's statements not completely credible, and went on to say that the claimant's statements about her pain were inconsistent with the evidence (again, essentially finding her statements not credible). *Sienkiewicz*, 409 F.3d at 804. The Court agrees with Plaintiff that the ALJ's boilerplate language here is distinguishable from these cases cited by the Commissioner; the language used by the ALJ here is unique in that it renders the ALJ's actual findings unclear and frustrates judicial review because the Court is unable to ensure those statements credited (whichever they might be) are included in the RFC assessment, a pitfall not found in the cases cited by the Commissioner.

Lastly, the Court notes how troubling it is to continually see ALJs implying, as ALJ Mellman did here [R. 16], that cane usage needs to be prescribed. The Seventh Circuit has repeatedly found that cane usage absolutely, unequivocally does not need to be prescribed. *Parker*, 597 F.3d at 922 ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription."); *Eakin v. Astrue*, 432 Fed.Appx. 607, 613 (7th Cir. 2011) (same); *Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir. 2009) (same). In light of these rulings, the Court cannot conceive of any reason for an ALJ to note that a cane has *not* been prescribed. It seems the only reason for an ALJ to note the lack of a cane prescription is to reflect negatively on Plaintiff's subjective statements as a whole and particularly with respect to cane usage, which is improper. On remand, the ALJ should more carefully address Plaintiff's cane usage.

In sum, the ALJ's lack of clarity creates a void where there should be "an accurate and logical bridge" between the evidence and the ALJ's conclusions about

9

Plaintiff's subjective statements. *Steele*, 290 F.3d at 941. The Court must remand on this basis. The Court must also remand on the failure to develop a full and fair record due to the ambiguities surrounding Plaintiff's need to elevate her legs.

## IV. Conclusion

Plaintiff's motion for summary judgment [dkt. 17] is GRANTED; Defendant's motion for summary judgment [dkt. 27] is DENIED. The Court reverses and remands this matter for proceedings consistent with this Memorandum Opinion and Order.

**ENTERED: 9/24/2020**

_____
Susan E. Cox,
United States Magistrate Judge